**FILED - GR**
March 21, 2011 3:33 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __aM_/____   SCANNED BY: ___ 3/21

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIS BUSSELL,

        Plaintiff,

v.

CENTRAL CREDIT SERVICES,
INC.,

        Defendant.
_____/

**1:11-cv-281**
**Robert J. Jonker**
**U.S. District Judge**

## Complaint

### I.    Introduction

1.    This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II.    Jurisdiction

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III.    Parties

3.    Plaintiff Chris Bussell is a natural person residing in Kent County, Michigan. Miss Bussell is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Miss Bussell is a "consumer," "debtor" and "person" as the terms are defined and/or used in the

1

MOC.

4. Defendant Central Credit Services, Inc. ("CCS") is a Florida corporation. CCS purportedly maintains offices at 9550 Regency Square Boulevard, Suite 500, Jacksonville, Florida 32225 and 500 Fountain Lakes Boulevard, Suite 130, St. Charles, Missouri 63301. The registered agent for CCS in Michigan is LexisNexis Document Solutions, Inc., 601 Abbott Road, East Lansing, Michigan 48823. CCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CCS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CCS is a "debt collector" as the term is defined and/or used in the FDCPA. CCS is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

IV. **Facts**

5. On June 24, 2004, a person named Rhonda K. Hartman submitted an application to Stillwater National Bank ("Stillwater") for a student loan, to be underwritten by Sallie Mae. Miss Bussell also signed the application as a potential co-borrower. The application was sent for processing to Sallie Mae, P.O. Box 59030, Panama City, Florida 32412-9030.

6. By letter dated August 3, 2004, Sallie Mae notified Ms. Hartman that her request to have Miss Bussell be a co-borrower for Ms. Hartman's student loan was denied because Miss Bussell did not meet certain eligibility requirements. The letter stated that Sallie Mae also had notified Miss Bussell that Miss Bussell's application to be a co-signer for Ms. Hartman's student loan was denied. The letter stated that if Sallie Mae received an application for a new, creditworthy co-borrower within 90 days, Sallie Mae would continue to process Ms. Hartman's loan application.

2

7.      Miss Bussell is not, and has never been, a co-borrower on any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

8.      Miss Bussell is not, and has never been, obligated to pay any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

9.      Apparently, Ms. Hartman later obtained a student loan from Stillwater. Apparently, Sallie Mae underwrote and/or purchased Ms. Hartman's student loan.

10.     In or about 2005, Miss Bussell lost track of Ms. Hartman and her whereabouts. Miss Bussell had only sporadic and occasional contact with Ms. Hartman over the next five years.

11.     Apparently, Ms. Hartman defaulted on her obligation to pay her student loan.

12.     On or about August 17, 2010, Miss Bussell went to the bank to become pre-qualified for a mortgage loan to purchase a home. As part of that process, the bank obtained Miss Bussell's credit reports and found that Sallie Mae was causing derogatory information regarding Ms. Hartman's unpaid student loan to be reported on Miss Bussell's credit reports, making Miss Bussell ineligible for a mortgage loan.

13.     At no time prior to August 2010 did Miss Bussell ever receive from Sallie Mae or any other entity, any contract, note, disclosure, billing statement, invoice, writing, document, telephone call or communication of any type whatsoever, stating or even suggesting that Miss Bussell was somehow obligated to pay any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

14.     On or about August 17, 2010, Miss Bussell communicated by telephone to Sallie Mae that she disputed owing money to Sallie Mae, Stillwater or any other entity in connection

3

with Ms. Hartman's student loan.

15.    Miss Bussell continues to dispute the alleged debt.

16.    Miss Bussell continues to refuse to pay the alleged debt.

17.    Apparently, Sallie Mae, Stillwater or some other entity hired CCS to collect the alleged debt from Miss Bussell.

18.    On or about March 8, 2011, at approximately 2:16 p.m., a CCS employee telephoned Miss Bussell and left a recorded message on Miss Bussell's voice mail or telephone answering machine, stating as follows: "This message is for A. Hartman or Chris Bussell. I'm calling about an important matter that needs your attention. This is not a solicitation. Please call 1-888-904-1800 and refer to your file number 6917188 when calling. When returning this call you will receive a pre-recorded full disclosure for the purpose of this call before you are connected. Thank you."

19.    On or about March 14, 2011, at approximately 11:49 a.m., a CCS employee telephoned Miss Bussell and left a recorded message on Miss Bussell's voice mail or telephone answering machine, stating as follows: "Hi Miss Hartman, this is Mona Davis. I'm calling you about an important matter that needs your attention. I assure you this is not a sales call. This is a matter that also involves Chris Bussell. You can reach me at 1-800-747-2398. Your file number is 691-7188. Before you're connected you will receive a pre-recorded full disclosure for the purpose of this call. Thank you."

20.    CCS and its employees telephoned Miss Bussell in connection with an effort to collect an alleged debt.

21.    The only reason the CCS employees telephoned Miss Bussell was to attempt to

collect a debt.

22.    The CCS employees telephoned Miss Bussell and left recorded messages on Miss Bussell's voice mail or telephone answering machine for the purpose of inducing Miss Bussell to telephone CCS to discuss an alleged debt.

23.    Each recorded messages left by a CCS employee on Miss Bussell's voice mail or telephone answering machine conveyed information regarding a debt directly or indirectly to Miss Bussell.

24.    Each recorded messages left by a CCS employee on Miss Bussell's voice mail or telephone answering machine was a "communication" as the term is defined and/or used in the FDCPA and MOC.

25.    Each recorded message left by a CCS employee on Miss Bussell's voice mail or telephone answering machine did not disclose in the message that the telephone call was from a debt collector.

26.    By failing to disclose in a recorded message left by a CCS employee on Miss Bussell's voice mail or telephone answering machine that the caller was a debt collector, CCS and its employee violated the FDCPA. 15 U.S.C. § 1692e(11).

27.    When each CCS employee left the recorded messages for Miss Bussell on her voice mail or telephone answering machine, CCS was aware or should have been aware of multiple published federal district court opinions in which the courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector. *See e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C.,* 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti*

*v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006).

28. When each CCS employee left the recorded messages for Miss Bussell on her voice mail or telephone answering machine, it was the practice of CCS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt collector.

29. One or more of the recorded messages left by a CCS employee on Miss Bussell's voice mail or telephone answering machine did not disclose in the message that the telephone call was from CCS.

30. One or more of the recorded message left by a CCS employee on Miss Bussell's voice mail or telephone answering machine did not disclose in the message the name of the company that was placing the telephone call to Miss Bussell.

31. CCS and its employees left one or more recorded messages on Miss Bussell's voice mail or telephone answering machine that did not include a meaningful disclosure of the caller's identity, which violated the FDCPA, 15 U.S.C. § 1692d(6).

32. When the CCS employees left the recorded message for Miss Bussell on her voice mail or telephone answering machine did not disclose in the message the name of the company that was placing the telephone call to Miss Bussell, it was the practice of CCS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message the name of the company that was placing the telephone call.

33. The recorded messages left by the CCS employees on Miss Bussell's voice mail

or telephone answering machine did not reveal in the messages the purpose of the telephone call.

34. The recorded messages left by the CCS employees on Miss Bussell's voice mail or telephone answering machine concealed the purpose of the telephone calls.

35. The recorded messages left by CCS and its employees on Miss Bussell's voice mail or telephone answering machine did not reveal and/or concealed the purpose of the communications, which violated the MOC, M.C.L. § 339.915(e).

36. When the CCS employees left the recorded messages for Miss Bussell on her voice mail or telephone answering machine, it was the practice of CCS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without revealing the purpose of the telephone call.

37. When the CCS employees left the recorded messages for Miss Bussell on her voice mail or telephone answering machine, it was the practice of CCS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine that concealed the purpose of the telephone call.

38. In the one-year period immediately preceding the filing of this complaint, CCS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without disclosing in the message that the telephone call was from a debt collector.

39. In the one-year period immediately preceding the filing of this complaint, CCS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without disclosing in the message the name of the company that was placing the telephone

7

call.

40.     In the one-year period immediately preceding the filing of this complaint, CCS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, without revealing in the message the purpose of the telephone call.

41.     In the one-year period immediately preceding the filing of this complaint, CCS in efforts to collect a debt telephoned more than one hundred consumers with Michigan addresses and left recorded messages on the voice mail or telephone answering machine of the person called, which message concealed the purpose of the telephone call.

42.     Each CCS employee violated CCS company policy when the CCS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not disclose in the message that the telephone call was from a debt collector.

43.     Each CCS employee did not violate CCS company policy when the CCS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not disclose in the message that the telephone call was from a debt collector.

44.     Each CCS employee violated CCS company policy when the CCS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not disclose in the message that the telephone call was from CCS.

45.     Each CCS employee violated CCS company policy when the CCS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not state in the message the name of the company that was placing the telephone call to Miss Bussell.

46.     Each CCS employee did not violate CCS company policy when the CCS

employee left a message on Miss Bussell's voice mail or telephone answering machine and did not state in the message the name of the company that was placing the telephone call to Miss Bussell.

47. Each CCS employee violated CCS company policy when the CCS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not reveal in the message the purpose of the telephone call.

48. Each CCS employee did not violate CCS company policy when the CCS employee left a message on Miss Bussell's voice mail or telephone answering machine and did not reveal in the message the purpose of the telephone call.

49. Each CCS employee intended to say the words the employee spoke when the employee left the above-quoted messages on Miss Bussell's voice mail or telephone answering machine.

50. The acts and omissions of CCS and its employees done in connection with efforts to collect a debt from Miss Bussell were done intentionally and wilfully.

51. CCS and its employees intentionally and wilfully violated the FDCPA and MOC.

52. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by jury and at trial.

V. **Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

53. Plaintiff incorporates the foregoing paragraphs by reference.

54.     Defendant has violated the FDCPA.  Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse plaintiff in connection with the collection of a debt;

b)      Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

c)      Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2– Michigan Occupational Code

55.     Plaintiff incorporates the foregoing paragraphs by reference.

56.     Defendant has violated the MOC.  Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendant violated M.C.L. § 339.915(e) by concealing or not revealing the

10

purpose of a communication when it is made in connection with collecting a debt;

c)      Defendant violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity; and

d)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)      Statutory damages pursuant to M.C.L. § 339.916(2); and

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: March 21, 2011

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com